# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Thomas Daniel Stachowiak,<br><br>Defendant. | Case No. 18-cr-296(1)(SRN/KMM)<br><br>**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |

Thomas Calhoun-Lopez, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, MN 55415, for Plaintiff.

Shannon R. Elkins, Office of the Federal Defender, 300 South 4th Street, Suite 107, Minneapolis, MN 55415, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This case is before the Court on Defendant's objections ("Objections") [Doc. No. 75] to United States Magistrate Judge Katherine Menendez's April 23, 2019 Report and Recommendation ("R&R") [Doc. No. 72] recommending that this Court deny Defendant's Motion to Suppress Search and Seizure [Doc. No. 51]. For the reasons set forth below, the Court overrules Defendant's Objections, adopts the R&R in full, and denies Defendant's Motion to Suppress.

## I. Background

### A. Factual Background

#### 1. March 7, 2018 Tracking Order

On March 7, 2018, Saint Paul Police Department Officer Clay Johnson applied for a court order authorizing the instillation and use of a pen register, trap and trace device, and electronic tracking device for a phone number ending in 3856 for a period of 60 days after the order was issued. (Gov't's Ex. 1.) The application also requested stored voice messages, SMS and MMS data, cell site activations, numbers dialed, and other such information. (*Id.* at 1.) The application specified that it requested a "[l]ocator tool which uses [p]recision [l]ocation and GPS, based on [p]robable [c]ause." (*Id.*)

Officer Johnson submitted an affidavit in support of the application. (*Id.* at 2.) In the affidavit, Officer Johnson stated that he was investigating Thomas Stachowiak, who was using a phone with a number ending in 3856, "for selling methamphetamine in the Twin Cities Metropolitan area." (*Id.*) Officer Johnson averred that any information "likely to be obtained from a pen register, trap and trace, and electronic tracking device is relevant to the ongoing criminal investigation."

Officer Johnson attested that certain additional "facts and circumstances for probable cause" existed. (*Id.* at 3.) For instance, he stated that a confidential reliable informant ("CRI") told him that a man named "Tommy S." was a multi-pound methamphetamine dealer in the Twin Cities Metropolitan area, with a residence near Stillwater, MN and connections to several other houses on the east side of St. Paul (*Id.*) He also attested to corroborating evidence that he obtained from other confidential

informants. (*Id.*) He further stated that a criminal-history check on Defendant revealed two felony drug convictions from 2001 and 2007. (*Id.*)

Moreover, St. Paul Police Department Sergeant Mike Meyer confirmed to Officer Johnson that Defendant was a "known narcotics dealer" and provided a phone number ending in 3856 that he obtained from a report related to Defendant. (*Id.* at 4.) The same number was linked with Defendant's Facebook page. (*Id.*)[1]

On March 3, 2018, three days before Officer Johnson's phone tracking application was submitted, he spoke with the original CRI who stated that Defendant had recently rented a vehicle from Alamo Car Rental to drive to Las Vegas and pick up a large amount of methamphetamine to bring back to the Twin Cities. (*Id.*) Officer Johnson confirmed that Defendant had indeed rented a vehicle from Alamo Car Rental, providing the 3856 number. (*Id.*)

As a result of this information, Officer Johnson applied for a court order for a pen register, trap and trace, and electronic tracking as he believed that the 3856 number was "being used as a means to communicate in an effort to traffic large amounts of narcotics." (*Id.*) A Ramsey County District Court Judge signed the application and the requested court order on March 7, 2018, finding "probable cause to believe the information likely to be obtained is relevant to an ongoing criminal investigation and possible violation(s) by Thomas Daniel Stachowiak . . . for facilitating the distribution of methamphetamine in

---

[1] Although no subscriber information was available for the number when Officer Johnson ran it through police databases, Officer Johnson explained that this was "a tactic often utilized by narcotic traffickers as a means to avoid detection from law enforcement." (Gov't's Ex. 1 at 4.)

the Twin Cities metropolitan area." (*Id.* at 6–9.)

### 2. **April 18, 2018 Tracking Order**

On April 18, 2018, Officer Johnson again applied for a court order authorizing the instillation and use of a pen register, trap and trace device, and electronic tracking device—this time for a phone number ending in 1231 for a period of 60 days after the court order was issued. (Gov't's Ex. 2.) The application similarly specified that it requested a "[l]ocator tool which uses [p]recision [l]ocation and GPS, based on [p]robable [c]ause." (*Id.* at 3.)

Much of the information contained in the application was the same as that presented in the March 7, 2018 application, including corroboration from several confidential informants about Defendant's narcotic trafficking activity and that Defendant had been using a "Latin King" drug connection to obtain this methamphetamine. (*Id.*) The phone number was connected to a "Tomm Johnson" in police databases. (*Id.*) Based on his training and experience, Officer Johnson explained that "it is common for narcotic traffickers to utilize a fictitious name in an effort to avoid detection from law enforcement." (*Id.*) Furthermore, St. Paul Police Department Officer Longen advised Office Johnson that he had spoken with another CI who knew that Defendant was a "high level methamphetamine dealer" who used a phone with a number ending in 1231. (*Id.*)

As a result of this information, Officer Johnson applied for a court order for a pen register, trap and trace, and electronic tracking for the phone number ending in 1231. (*Id.*) A Ramsey County District Court Judge signed the application and the requested court

4

order on April 18, 2018, finding "probable cause to believe the information likely to be obtained is relevant to an ongoing criminal investigation and possible violation(s) by Thomas Daniel Stachowiak . . . for facilitating the distribution of methamphetamine in the Twin Cities metropolitan area." (*Id.* at 7.)

### 3. September 14, 2018 Traffic Stop

On September 14, 2018, Stearns County Sheriff's Deputy Adam Johnson was on patrol in Sauk Center, MN with his canine partner when he saw a black Dodge pickup truck parked near the front door of a Holiday gas station around midnight. (Jan. 31, 2019 Hr'g Tr. [Doc. No. 64] at 13:12–25, 14:9–10, 14:24–25, 15:19–16:4, 16:21–23.) After running the plate number of the pickup, Deputy Johnson discovered that the registered owner's license had been revoked. (*Id.* at 16:5–20.) Deputy Johnson could see that the driver of the vehicle was male. (*Id.* at 17:1–9.) When he saw the pickup drive away, he decided to make a traffic stop to determine if the man he saw driving the vehicle was the registered owner whose license was revoked. (*Id.* at 17:10–22.) Deputy Johnson activated his emergency lights, the pickup stopped, and he approached the driver's side of the vehicle. (*Id*. at Tr. 18:4–20:1.) He identified Defendant as the driver of the pickup. (*Id.*)

Deputy Johnson testified that Defendant was "very fidgety" and "manic"— reaching around the vehicle quickly, talking fast, and sweating. (*Id.* at 20:4–8.) Based on his experience, Deputy Johnson believed that Defendant was under the influence of methamphetamine. (*Id.* at 21:6–23:6.) Although Defendant denied using illegal drugs, Deputy Johnson observed "heat bumps" on Defendant's tongue, which he testified could be a sign that someone has recently smoked methamphetamine from a pipe. (Gov't's Ex.

5

7 at 48:08–20); Jan. 31, 2019 Hr'g Tr. 24:15–21).

Deputy Johnson approached the vehicle and asked a female passenger if there was anything illegal in the vehicle. (*Id.* at 9:00- 9:10.) While the passenger indicated that she did smoke marijuana, she denied using methamphetamine. (*Id.*) At that point, Deputy Johnson noticed marijuana remnants in the vehicle. (Jan. 31, 2019 Hr'g Tr. at 25:23–26:6.)

Deputy Johnson then decided to let his canine partner sniff the vehicle for the presence of drugs. (Gov't's Ex. 7 at 52:59–53:45.) Before the search, Defendant stated that there was marijuana under the driver's seat. (Jan. 31, 2019 Hr'g Tr. at 30:10–13.) The canine partner confirmed this, indicating that there were drugs in the cab of the pickup. (*Id.* at 30:14– 25.) Deputy Johnson and another officer searched the interior of the pickup and discovered a bag of marijuana under the driver's seat, a pipe coated in white residue that appeared to be methamphetamine, and a large bag of a crystal-like substance that field-tested positive for methamphetamine. (*Id.* at 31:1–33:6.) They placed Defendant under arrest and, pursuant to a search incident to arrest, found another baggie with a crystal-like substance that field-tested positive of methamphetamine on his person. (*Id.* at 36:12–37:5.)

Upon entering the Stearns County Jail, two cell phones were seized from Defendant. (Gov't's Ex. 5 at 3.) Deputy Johnson applied for and obtained a warrant to get physical possession of both of the cell phones at the Stearns County Jail, and subsequently applied for a warrant to search the phones' contents. (Gov't's Ex. 5 and 6.)

On December 4, 2018, Defendant was indicted on one count of conspiracy to

6

distribute methamphetamine and four counts of possession with intent to distribute methamphetamine between May and September of 2018. (Indictment [Doc. No. 1].)

### B. Procedural Background

On January 15, 2019, Defendant moved to suppress the real-time cell site location information ("CSLI") obtained from GPS phone tracking conducted pursuant to the March 7 and April 18, 2018 Orders. (Def.'s Mot. to Suppress at 2.) Defendant argues that these court orders failed to comply with the stringent requirements of the Fourth Amendment. (Def.'s Supp. Mem. [Doc. No. 67] at 6–7.) Specifically, Defendant contends that the court orders at issue do not establish probable cause as required under *Carpenter v. United States*, 138 S. Ct. 2206 (2018). (*Id.*)

Defendant also moved to suppress evidence obtained as a result of the stop and search of Defendant's car during the September 14, 2018 traffic stop. (Motion to Suppress at 1.) Defendant asserts that there was neither a reasonable articulable suspicion nor probable cause to conduct the traffic stop, and as such, any evidence obtained during the subsequent search of the vehicle should be suppressed along with any "fruit of the poisonous tree." (Def.'s Mem. in Supp. at 17–20.)

In a thorough and well-reasoned R&R, Magistrate Judge Menendez recommended that Defendant's Motion to Suppress be denied. (R&R at 1.) On May 7, 2019, Defendant filed a timely objection. The Government responded on May 20, 2019. (Gov't's Resp. to Objections [Doc. No. 80].)

## II. Analysis

### A. Standard of Review

Upon issuance of an R&R, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "The objections should specify the portions of the magistrate judge's [R&R] to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07-cv-1958 (JRT/RLE), 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008). Then, the district court will review *de novo* those portions of the R&R to which an objection is made, and it "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); D. Minn. LR 72.2(b)(3).

### B. Challenged Search Warrants

#### 1. March 7 and April 18, 2018 Tracking Orders

Defendant objects to the magistrate judge's ruling recommending that his motion to suppress be denied with respect to the March 7 and April 18, 2018 Orders. He argues that, under *Carpenter*, Officer Johnson was required to apply for a search warrant supported by probable cause to obtain the real-time CSLI authorized by the Orders, which he failed to do. (Def.'s Mem. in Supp. at 12.)

Specifically, in his Objections, Defendant contends that because the issuing judges relied on applications that cited the Stored Communications Act ("SCA"), 18 U.S.C. § 2701–2712, and Minnesota Statute § 626A.36, subd. 2(2), the more stringent Fourth Amendment probable cause standard was not met. (Obj. at 7.) Defendant further objects to the magistrate judge's conclusion that the practical application of the legal standard employed by the issuing judges meets the requirements of the Fourth Amendment. (*Id.* at

8

8.)

> The Fourth Amendment states:
>
> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. In *Carpenter*, the Supreme Court held that a person has a legitimate expectation of privacy in regard to his or her historical cell-site location information, that review of historical CSLI data by law enforcement constitutes a search under the Fourth Amendment, and that the government must obtain a search warrant based on probable cause before it can acquire historical CSLI. 138 S. Ct. 2206.

The applications at issue here seek both the instillation of a pen register, or trap and trace device, as well as real-time CSLI and the content of voicemails, text messages, and images. (Gov't's Ex. 1 at 1; Gov't Ex. 2 at 1.) The applications reference both the Stored Communications Act ("SCA") and Minnesota Statute § 626A.36, subd. 2(2). (Gov't's Ex. 1 at 2; Gov't Ex. 2 at 2.) The SCA, which permits a government attorney to apply for an order authorizing the instillation of a pen register or trap and trace device, requires a showing that is "well short of the probable cause requirement for a warrant." Minnesota Statute § 626A.36, subd. 2(2), which also authorizes the use of a pen register or trap and trace device, only requires "a statement of the facts and circumstances relied upon by the applicant to justify the applicant's belief that an order should be issued."

However, the applications at issue here were more robust. They set forth the probable cause necessary to show that evidence of Defendant's methamphetamine

trafficking would be revealed through real-time CSLI. (Gov't's Ex. 1; Gov't Ex. 2.) When deciding whether to issue a search warrant, a judge is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The Court agrees with the magistrate judge that these applications and the resulting orders readily met the standards of the Fourth Amendment.

First, although Officer Johnson's applications do not use the words "search warrant," the language in the Orders expresses the essence of the finding required by the Fourth Amendment—that, based on the facts presented, there is a fair probability that evidence of Defendant's suspected methamphetamine dealing would be generated by real-time CSLI. (R&R at 12.) And, even if Officer Johnson had presented an application with the title "search warrant," it is unclear how the issuing judges' probable cause finding would have been materially different than the findings in the Orders. (*Id.*) Additionally, in the real-time CSLI context, there is no true difference between evidence of a crime being located at the place to be searched (the location data) and such evidence being relevant to the investigation into Defendant's crime. (*Id.* at 13.)

Second, Officer Johnson's applications differ significantly from the type of SCA applications that were found to be insufficient under *Carpenter* for law enforcement to obtain historical CSLI. (*Id.*) Traditional SCA applications only require certification, usually by an Assistant United States Attorney, that the information is relevant and material to the investigation. *Carpenter*, 138 S.Ct. at 2231. SCA applications are not

typically accompanied by sworn affidavits from a law enforcement officer like was done in this case. *Id.*

Moreover, Officer Johnson and the issuing judges linked the application to the probable cause standard. In each of his applications and the accompanying affidavits, Officer Johnson provided sworn testimony indicating that he was seeking real-time CSLI, relying on "facts and circumstances," "based on [p]robable cause." (Gov't's Ex. 1 at 1, 3; Gov't's Ex. 2 at 1, 3.) The issuing judges stated that they were allowing the collection of real-time CSLI because "there is probable cause to believe that the information likely to be obtained by such instillations and use is relevant to an ongoing criminal investigation into possible violation(s) by [Defendant] . . . for facilitating the distribution of methamphetamine." (Gov't's Ex. 1 at 7; Gov't's Ex. 2 at 7.)

Based on this record, there was certainly probable cause to support the issuing judges' decisions to allow real-time CSLI of Defendant's cell phones. Accordingly, this Court adopts the R&R and Defendant's Motion to Suppress is denied.

### 2. September 14, 2018 Traffic Stop

Defendant moves this Court to suppress the information obtained pursuant to the September 14, 2018 traffic stop and subsequent search of Defendant's vehicle. He argues that Deputy Johnson had neither a reasonable articulable suspicion nor probable cause to conduct the traffic stop, so the evidence obtained during the subsequent search must be suppressed. (Def.'s Mem. in Supp. at 17–21.)

In particular, Defendant objects to the magistrate judge's conclusion that it was proper for Deputy Johnson to stop Defendant "to check to see whether the male [driving

the vehicle] . . . was the registered owner [of the vehicle] whose license was revoked."
(Jan. 31, 2019 Hr'g Tr. at 17:16–22.) He asserts that Deputy Johnson did not have a reasonable, articulable suspicion to stop Defendant until after he commenced the stop. (Def.'s Mem. in Supp. at 19.) He further contends that Deputy Johnson's failure to compare the age, race, height, weight, or other information regarding the registered owner of the vehicle to the driver, should result in the suppression of the evidence seized as a result. (*Id.* at 18.)

It is well established that a traffic stop is a "seizure" within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). For purposes of constitutional analysis, a traffic stop is characterized as an investigative detention, rather than a custodial arrest. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). As such, a traffic stop is governed by the principles of *Terry v. Ohio*, 392 U.S. 1 (1968). Generally, such a stop must be supported by at least a reasonable, articulable suspicion that criminal activity is afoot. *Prouse,* 440 U.S. at 663. "If there is an articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, a traffic stop on that basis is not unreasonable under the Fourth Amendment." *Id.*

Deputy Johnson's stop of Defendant's vehicle on September 14, 2018 was supported by a reasonable articulable suspicion that a motorist without a valid license was driving the vehicle. Deputy Johnson stopped Defendant's vehicle only after he ran a search of the license plate, discovered that the registered owner did not have a valid driver's license, confirmed that the registered owner was male, and then saw a male

12

individual get into the driver's seat of the same vehicle. (Jan. 31, 2019 Hr'g Tr. at 16:5–20, 17:1–22.) Under Eighth Circuit law, a law enforcement officer need not confirm more than the sex of the driver operating the vehicle prior to initiating a stop. *United States v. Chartier*, 772 F.3d 529, 543 (8th Cir. 2014). Moreover, the person driving a vehicle is presumed to be the registered owner. *Hoff v. Edwards*, No. 13-cv-1992 (JRT/LIB), 2014 WL 1775737, at *5 (D. Minn. May 5, 2014). As such, Deputy Johnson had collected all the necessary information prior to making the stop.

Therefore, because the traffic stop was conducted properly, the Court agrees with the magistrate judge that Defendant's motion to suppress evidence obtained subsequently should be denied.

### III. Conclusion

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

A. Defendant's Objections [Doc. No. 75] are **OVERRULED**;

B. Magistrate Judge Menendez's R&R [Doc. No. 72] is **ADOPTED** in its entirety; and

C. Defendant's Motion to Suppress Search and Seizure of Items [Doc. No. 51] is **DENIED**.

Dated: June 21, 2019                     s/Susan Richard Nelson
                                                 SUSAN RICHARD NELSON
                                                 United States District Judge